

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-5-2005

# USA v. Rhines

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2906

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Rhines" (2005). *2005 Decisions.* Paper 729.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/729

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 04-2906

_____

UNITED STATES OF AMERICA

v.

GARY RHINES
a/k/a Derrick Upshaw
a/k/a Gary R. Allen
a/k/a Robert Camby

Gary Rhines,
Appellant

_____

On Appeal From the United States
District Court
For the Middle District of Pennsylvania
(D.C. Crim. Action No. 01-cr-00310)
District Judge:  Hon. James F. McClure, Jr.

_____

Argued June 7, 2005

BEFORE:  AMBRO, STAPLETON and ALARCON,*
Circuit Judges

(Opinion Filed August 5, 2005)

_____

* Hon. Arthur L. Alarcon, Senior United States Circuit Judge for the Ninth Circuit, sitting
by designation.

Ronald C. Travis (Argued)
Rieders, Travis, Humphrey,
Harris, Waters & Waffenschmidt
161 West Third Street
P.O. Box 215
Williamsport, PA 17703
 Attorney for Appellant

 John J. McCann
Office of the United States Attorney
240 West Third Street - Suite 316
Williamsport, PA 17701
 and
Theodore B. Smith, III (Argued)
Office of the United States Attorney
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108
 Attorneys for Appellee

---

OPINION OF THE COURT

---

STAPLETON, Circuit Judge:

Because we write solely for the parties who are familiar with the facts, we recount them only briefly below. In the fall of 2001, a federal grand jury returned a three-count indictment against Appellant Gary D. Rhines ("Rhines"), charging him with violations of federal drug laws, 21 U.S.C. §§ 841, 846, 861 and 18 U.S.C. § 2.[1] Steven Gair ("Gair"),

---

[1]Count I: conspiracy to possess with intent to distribute more than 50 grams of cocaine base (crack) in violation of 21 U.S.C. § 846

2

who was also facing drug charges, cooperated with authorities to prosecute Rhines. Rhines, an African American, was prosecuted in federal court, while Gair, a Caucasian, was prosecuted in state court. On April 22, 2000, the jury convicted Rhines on Count III of the Indictment.[2]

During the proceedings before the District Court, Rhines filed the following motions/requests, all of which the Court denied, and all of which provide the basis for this appeal: (1) a pre-trial motion requesting that the District Court permit discovery on the issue of selective prosecution based on the alleged disparity in the treatment Rhines and Gair received; (2) a pre-trial motion to strike the government's Fed. R. Crim. P. 16 notice due to the government's five-month delay in providing the disclosures; (3) a request that the jury be charged that the government was required to show the controlled substance at issue was "crack" cocaine; (4) a Fed. R. Crim. P. 29 motion for judgment of acquittal alleging the government had failed to prove essential elements of the offense charged in Court III; (5) a post-verdict motion for a new trial on the basis of alleged *Brady* violations, and the combined prejudice allegedly resulting from the inclusion of

---

Count II:  aiding and abetting and causing possession with intent to distribute and the distribution of more than 50 grams of cocaine base (crack) in violation of 21 U.S.C. § 841, 18 U.S.C. § 2
Count III:  possession with intent to distribute and distribution of more than 50 grams of cocaine base (crack) and, being over 18, employing a minor to distribute in violation of 21 U.S.C. §§ 841(a)(1), 861 and 18 U.S.C. § 2.

[2]Rhines moved for a Judgment of Acquittal pursuant to Fed. R. Crim. P. 29 on all counts at the close of the government's case. The court granted the motion as to Counts I & II.

aliases and Counts I and II in the Indictment.

Rhines also contends that he was improperly sentenced to life in prison because the government invalidly filed and amended its Information of Prior Convictions pursuant to 21 U.S.C. § 851(a). The District Court found that the Information was properly amended and allowed the government to rely on Rhines' prior convictions to seek an enhanced sentence.

Jurisdiction was proper in the District Court pursuant to 18 U.S.C. § 3231. Jurisdiction is proper in our Court pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3231.

I.

A district court's decision to deny a discovery request is reviewed for abuse of discretion. *See United States v. Al Hedaithy*, 392 F.3d 580, 605-06 (3d Cir. 2004). We review the sufficiency of jury instructions *de novo*. *United States v. Price*, 13 F.3d 711, 724 (3d Cir. 1994). We review a district court's denial of a motion for a new trial for abuse of discretion. *See Waldorf v. Shuta*, 3 F.3d 705, 710 (3d Cir. 1993); *United States v. Gilsenan*, 949 F.2d 90, 95 (3d Cir. 1991). "When a *Brady* violation is alleged issues of law and fact usually are presented. In that circumstance we review the district court's legal conclusions on a *de novo* basis and its factual findings under the clearly erroneous standard." *United States v. Joseph*, 996 F.2d 36, 39 (3d Cir. 1993). We review the sufficiency of the government's notice pursuant to 21 U.S.C. § 851(a) *de novo*. *United States v. Weaver*, 267 F.3d 231 (3d Cir. 2001).

4

II.

A.

A *prima facie* case of selective prosecution draws "'on ordinary equal protection standards.' The claimant must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.' To establish a discriminatory effect in a race class, the claimant must show that similarly situated individuals of a different race were not prosecuted." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal citations omitted). A defendant making such a claim is entitled to discovery on that claim only if he presents "'some evidence tending to show the existence of the essential elements of the defense,' discriminatory effect and discriminatory intent." *Armstrong*, 517 U.S. at 468; *see also United States v. Minerd*, 182 F. Supp. 2d 459, 464 (W.D. Pa. 2002).

Here, the record establishes that Rhines and Gair were not similarly situated because, as the District Court noted, Gair was cooperating with law enforcement officials while Rhines was not. In addition, Rhines' criminal history included two felony drug convictions, while this was Gair's first drug arrest.[3] As a result, Rhines failed to show "some evidence" of discriminatory effect and we are satisfied that the District Court did not abuse its discretion in denying his motion to compel discovery.

B.

---

[3]Gair had prior arrests for DUI, retail theft and fighting with a girlfriend.

Fed. R. Crim. P. 16(a)(1)(G) requires the government to "disclose to the defendant a written summary of [expert] testimony the government intends to use . . . during its case in chief." "It is expected that the parties will make their requests and disclosures in a timely fashion." Fed. R. Crim. P. 16 advisory committee notes.

Here, the government admitted that it took five months to provide the written summary of the expected testimony and curriculum vita for its expert, a forensic scientist. Compliance with Rule 16 was delayed until two weeks prior to the April 15, 2002 trial. The District Court noted this delay, yet determined that Rhines was not prejudiced because he should have expected that a forensic scientist would testify in a trial involving drug charges as to the results of lab analysis on the drugs seized. The District Court also found that the defense had been provided with lab reports which "generally reflected" the expert's expected testimony in December 2001. The Court afforded Rhines the opportunity to voir dire the government's expert outside the presence of the jury. Given these facts and the fact that Rhines stipulated to the expert's testimony, we are satisfied that the required prejudice was not shown and that the District Court did not abuse its discretion in denying Rhines' motion. *See United States v. Breland*, 356 F.3d 787, 797 (7th Cir. 2004).

## C.

Count III of the indictment charged Appellant with possession and distribution of "cocaine base (crack cocaine), a schedule II controlled substance." Appellant stipulated

6

that, if called, the government's expert would testify that the substance possessed and distributed was a substance "containing a cocaine base." Appellant argues that the District Court's refusal to charge the jury that it was required to find that the controlled substance he possessed was "crack" cocaine, rather than cocaine base, requires a new trial. We were confronted by a similar situation in *United States v. Lewis*, 113 F.3d 487, 492 (3d Cir. 1997), where the indictment charged distribution of "cocaine base," the District Court, over the objection of the defendant, charged that it did not matter whether the substance was found to be "powder cocaine or cocaine base," and the defendant, on appeal, argued that the charge "broadened the indictment and violated his right to be tried only on an indictment returned by the grand jury." We held that this presented the issue of whether there had been a "fatal variance" and that there had not been because the defendant had neither been prejudiced in the preparation of his defense nor provided insufficient protection against reprosecution for the same offense. Based on *Lewis*, we reach the same conclusion here for the same reasons.[4] Even assuming that a variance exists, we find it is not fatal.

---

[4]We also note that Rhines was sentenced under § 841(b)(1)(A)(iii), which proscribes punishments for offenses involving "cocaine base." The statute does not mention crack cocaine. As this Court has noted, "while the term 'cocaine base' means only crack when a sentence is imposed under the Sentencing Guidelines, 'cocaine base' encompasses all forms of cocaine base with the same chemical formula when the mandatory minimum sentences under 21 U.S.C. § 841(b)(1) are implicated." *United States v. Barbosa*, 271 F.3d 438, 467 (3d Cir. 2001). Because Rhines was sentenced under the statute and not the sentencing guidelines, there was no need to have the jury find the substance to be "crack" as opposed to cocaine base.

D.

Fed. R. Crim. P. 29 permits a defendant to file a motion for judgment of acquittal after a verdict is returned, but we have noted that a defendant "challenging the sufficiency of the evidence bears a heavy burden." *United States v. Casper*, 956 F.2d 416, 421 (3d Cir. 1992). In reviewing a motion for judgment of acquittal, the court "must view the evidence and the inferences logically deducible therefrom in the light most favorable to the government, to determine if there is sufficient evidence to support the factfinder's verdict." *United States v. McNeill*, 887 F.2d 448, 450 (3d Cir. 1989). "A verdict will be overruled only if no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987).

Appellant contends that he was entitled to a Rule 29 Judgment of Acquittal on Count III because the government failed to prove three essential elements of the charge: (1) that the substance was crack cocaine; and (2) that Rhines was over 18 years of age; and (3) that Rhines used a person under 18 in the commission of the crime. As we noted above, the government proved that the drugs found were cocaine base and this was not a fatal variance.

The evidence at trial would support findings that: (1) Anthony Nixon, a 16 year old male, was in the car with Rhines when Rhines sold Gair cocaine base as part of a police sting; (2) Rhines gave Nixon the "buy money" to hold and tried to distance himself from

8

Nixon and the money when he identified a police officer in the area; (3) Rhines later asked Nixon to take the blame for the drugs; and (4) Rhines knew Nixon was a minor. The jury found beyond a reasonable doubt that Rhines, when he was over 18 years of age, "employed, hired, used, persuaded, induced, enticed or coerced" a minor "to further the possession with intent to distribute or distribution of cocaine base."

Rhines insists that there is no evidence from which a jury could conclude that he was over 18. Moreover, "absent from the evidence submitted by the government [he contends] is any evidence Nixon was ever hired, employed or otherwise used by Rhines to possess with intent to distribute the substance delivered to Gair, any evidence Nixon actually distributed the substance to Gair, or any evidence Rhines provided to Nixon the substance delivered to Gair." Reply Br. at 12 (emphasis in original). Implicit in this latter contention is, inter alia, the argument that Count III charged Rhines with having used a minor in a manner causing the minor to possess and to distribute cocaine base, while the jury found, consistent with the Court's instructions, that Rhines used a minor to facilitate Rhines' own possession and distribution of cocaine base.

While Rhines' arguments here are not without some force, it is clear that any error was harmless. Sections 841(a) and 841(b)(1)(A)(iii) of Title 21 (1) make it unlawful for anyone to knowingly and intentionally possess with intent to distribute or to distribute 50 grams or more of cocaine base, and (2) provide that anyone who does so "after two or more prior convictions for a felony drug offense have become final, . . . shall be

9

sentenced to a mandatory term of life imprisonment without release." Count III charged that Rhines violated § 841(a) by possessing and distributing more than 50 grams of cocaine base on or about August 24, 2001, and the jury, consistent with the instructions of the Court, found Rhines guilty of this offense as charged. As a result of the jury's verdict on this charge and the fact that Rhines had two prior, final convictions for felony drug offenses, the District Court imposed the mandatory sentence of life imprisonment without release.

It is true, as Rhines stresses, that Count III contains additional allegations and makes the additional charge that Rhines' conduct also violated 21 U.S.C. § 861(a)(1), which makes it a crime for anyone "at least eighteen years of age to knowingly and intentionally . . . use a person under eighteen years of age to violate" 21 U.S.C. § 841(a). Section 861(b) provides that anyone who so uses a minor to violate § 841(a) shall, if it is a first such offense, be subject to "twice the maximum punishment otherwise authorized."

Given Rhines' conviction for violating § 841(a) and the resulting life sentence without release, we regard the additional allegations of the complaint and findings of the jury to be surplusage, and any issues raised thereby to be moot.

E.

Fed. R. Crim. P. 33 provides that a court, upon defendant's motion, "may grant a new trial to that defendant if the interests of justice so require." The decision to grant a new trial is discretionary and permits a court to "set aside the verdict and order a new trial

10

if it ascertains that the verdict constitutes a miscarriage of justice." *United States v. Daniels*, 1996 WL 311444, at *4 (E.D. Pa. 1996), *aff'd* 118 F.3d 1578 (3d Cir. 1997). Rule 33 motions "are not favored and should be granted only with great caution 'in the most extraordinary circumstances.'" *United States v. Barroso*, 108 F. Supp. 2d 338, 341 (S.D.N.Y. 2000) (internal citation omitted).

Rhines alleges he is entitled to a new trial on two grounds. First, he maintains that the government suppressed evidence favorable to him, specifically evidence of an agreement between the government and Gair that gave Gair a "county sentence" in return for his cooperation in Rhines' arrest and prosecution, in violation of their obligations under *Brady & Giglio. See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972); *United States v. Starusko*, 729 F.2d 256, 260 (3d Cir. 1984). Rhines also specifically alleges that Gair perjured himself by testifying that he had no agreement with the government. A conviction is "obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Kyles v. Whitley*, 514 U.S. 419, 433 n.7 (1995).

However, the District Court found as a matter of fact that "[a]t the time of trial, there was no oral or written agreement between the government and Gair." App. at 60. While it is true, as Rhines stresses, that there was evidence from which a contrary inference could be drawn, the District Court's finding has record support and is not

11

clearly erroneous.

Second, Rhines contends that the inclusion of alleged aliases and Counts I and II in the Indictment created sufficient prejudice to warrant the entry of a new trial order.[5] We are unpersuaded.

The indictment referred to the defendant as "Gary Rhines, a/k/a Gary Allen, a/k/a Derrick Upshaw, a/k/a Robert Camby." The indictment, including these references, was read to the jury at the time of jury selection. During trial, no witness identified the defendant by one of these alleged aliases. As a result, after all the evidence was in, counsel advised the court that they had agreed to the redaction of the aliases from the indictment prior to it going out with the jury. The court redacted the indictment and made no references to the aliases in its instructions or jury verdict sheet. The court did instruct the jury that the indictment was not evidence, and they must consider only the evidence they heard in the courtroom.

Nothing in the record suggests that Rhines was not known by these aliases or that there was no reason to believe they might be used by witnesses at trial to identify the defendant. Accordingly, and understandably, no pretrial motion to strike was filed and no objection raised when the indictment was read at the commencement of the proceedings.

---

[5]Rhines alleges that prejudice of the contents of the Indictment coupled with the alleged *Brady* violations "warrants the entry of a new trial order in the interest of justice." Br. Appellant at 40. Because the District Court correctly held that there was no *Brady* violation, we now look only to the alleged combined prejudice of the aliases and the dismissal.

*See United States v. Beedle*, 463 F.2d 721, 725 (3d Cir. 1972) (noting that use of aliases is permissible where they will serve at trial to help identify the defendant). At the close of all the evidence without reference having been made to any of the aliases, however, the issue was raised and a curative measure agreed upon and carried out. *See United States v. Harriston*, 329 F.3d 779, 792 (11th Cir. 2003) (suggesting redaction as a curative measure when trial witnesses do not make reference to an alias). At that time, the defense did not ask for an additional curative instruction or in any other way indicate to the court that the agreed upon cure was inadequate.

Under these circumstances, we review for plain error. Because (1) the agreed upon curative measures were not obviously inadequate, (2) it is highly unlikely that the reading of the indictment at the commencement of trial affected the outcome of the proceeding, and (3) that reading clearly did not "seriously affect the fairness, integrity or public reputation of [the] judicial proceedings," we find no plain error. *United States v. Olano*, 507 U.S. 725, 736 (1993).

While Rhines acknowledges that "[a] judgment of acquittal on some of the counts of an indictment in the middle of trial does not give rise to a right to a new trial," *United States v. Caballero*, 277 F.3d 1235, 1243 (10th Cir. 2002), he insists that the District Court's decision to grant his Rule 29 motion as to Counts I and II at the end of the government's case-in-chief shows that the government never had sufficient evidence to prove those counts and that their inclusion was "a tactical ploy designed to cause the jury

13

to believe 'where there is smoke there is fire.'" Br. Appellant at 44. However, we find nothing in the record to support either a finding of bad faith on the government's part in charging all three counts or a finding that once Counts I and II were dismissed the jury failed to follow the instructions given to it to decide only Count III using only the evidence applicable to that count. Thus, we conclude that the general rule regarding the dismissal of some counts at trial is the governing one here.

The District Court did not abuse its discretion in denying Rhines' Rule 33 motion.

F.

Pursuant to 21 U.S.C. § 851(a)(1), the government may seek an enhanced sentence for prior convictions only if it files an information with the court listing the previous convictions to be relied on "before trial, or before entry of a plea of guilty." "Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence." 21 U.S.C. § 851(a)(1).

Here, Rhines argues that the Indictment was improper because the District Court allowed the government to amend an incorrect date and include an invalid conviction. Neither of these allegations is persuasive. The original Information incorrectly identified the date of a previous controlled substance conviction (listing the last digit of the year incorrectly), but clearly identified the type of conviction and where it occurred. We have previously found that this type of error is a "clerical mistake" properly corrected in an amended information. *See United States v. Weaver*, 267 F.3d 231, 250 (3d Cir. 2001).

14

The government's original Information also listed a state conviction for possession with intent to deliver a controlled substance and conspiracy. Rhines contends this conviction cannot be used to enhance his sentence because he was given "probation without verdict." However, Rhines violated his probation, which led to his being "Adjudged Guilty" of those crimes and sentenced to prison. Thus, the District Court correctly found that prior conviction to be a proper ground upon which the government could seek to enhance Rhines' sentence.

VI.

The judgment of the District Court will be affirmed.